### In re CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 9, 1903.)

1. MUNICIPAL CORPORATIONS—COMMISSIONERS OF ESTIMATE AND ASSESSMENT—AWARD OF COMPENSATION.
   Under the statute in regard to the compensation of commissioners of estimate and assessment, which provides that fees are to be paid only for days that are "actually and necessarily" employed in the work of the commission, the court cannot sanction an award unless it is able to see from the proof submitted that the sums claimed are properly due.

2. SAME—RECORD OF MEETINGS.
   A bare statement in the minutes of a commission of estimate and assessment that a meeting was held and commissioners were present is insufficient to show that the meeting was one for which compensation is due, and in such case no allowance should be made.

3. SAME—WANT OF QUORUM.
   Where commissioners of estimate and assessment have fixed dates for stated meetings, a commissioner who attends a meeting which has been called, ready to proceed to business, is entitled to compensation, though no meeting is held on account of a want of a quorum.

4. SAME—ADJOURNED MEETINGS.
   Where a meeting had been adjourned for good cause shown either by the corporation counsel or the property owners, the commissioners present are entitled to compensation.

5. SAME—CONCLUSIVENESS OF MINUTES.
   Where the record of meetings of commissioners of estimate and assessment does not show that a commissioner attended, beyond a statement on a subsequent date that he then said he was present, no compensation should be allowed, as the minutes of the meeting should be held conclusive as to the commissioners, unless shown to be incorrect.

6. SAME—EXECUTIVE SESSIONS.
   Where the number of executive sessions of commissioners of estimate and assessment is out of all proportion to the questions or area of land

involved, the charges of the commissioners for compensation for attendance cannot be sustained.

7. SAME—PROOF OF NECESSITY.

Under Greater New York Charter, § 998, as amended by Laws 1901, c. 466, providing that due proof of the nature and extent of services rendered and disbursements charged by commissioners of estimate and assessment shall be furnished, and no unnecessary cost or charges shall be allowed, a mere statement that an "executive session" was held is an insufficient showing of its nature and necessity to support a charge of the commissioners for compensation.

8. SAME—COMPENSATION.

Evidence as to the services rendered by commissioners of estimate and assessment, the questions involved, and the number of meetings held, examined, and the compensation due each commissioner determined.

Appeal from special term, New York county.

Proceedings by the city of New York for the acquisition of certain lands for street purposes. From an order taxing the costs of the commissioners of estimate and assessment, the city appeals. Modified and affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

John P. Dunn, for appellant.

John H. Rogan, for respondent.

O'BRIEN, J. This proceeding was instituted for the acquisition by the city of New York of lands to form a part of East 238th street. Commissioners of estimate and assessment were duly appointed, and, upon their motion for taxation of costs, charges, and assessments, they filed affidavits stating the number of meetings attended by them, wherefrom it would appear that Commissioner Clancy had been present at 50 meetings, payment for which at the rate fixed by law would be $332; Commissioner Carleton at 44 meetings, amounting to $292; Commissioner Windolph, 40 meetings, amounting to $264; Commissioner Kirwan, 4 meetings, amounting to $24; and Commissioner Hoffman, 2 meetings, amounting to $12. The corporation counsel acquiesced in the payment of the amounts stated by the two commissioners last named, who resigned during the progress of the work, but took exception to the amounts claimed by the other commissioners, concluding from the record of the meetings held and the work performed that such sums were excessive, and that Commissioner Clancy should be credited with but 31 meetings, Commissioner Carleton with 17, and Commissioner Windolph with 17 meetings, amounting, respectively, to $154, $126, and $126. The court, upon the affidavits of the commissioners, the certificate of the corporation counsel, and the minutes of the proceeding, granted the motion of the commissioners, and from the order so entered the city has appealed.

In view of the rule laid down by Mr. Justice Hatch in Re Spuyten Duyvil Park (November term) 79 N. Y. Supp. 192, it is unnecessary to restate what must appear in order that claims of commissioners in such proceedings may be sustained. It will not do to have the expense of the proceedings unduly increased; and, while the court should in no parsimonious spirit deal with the question of payment for the work per-

formed and the amount to be awarded, at the same time it is bound to keep in mind that the statute in accordance with which compensation is to be determined has prescribed that the fees are to be paid only for days that are "actually and necessarily" employed in the work of the commission. It follows that the court cannot sanction an award unless it is able to see from the proof submitted that the sums claimed are properly due.

The present record contains more information as to the nature of the work of the commissioners at the meetings held than has been afforded in other appeals; but even here, in some instances, the minutes are entirely too meager to show either that the work alleged to have been performed was necessarily called for, or that the commissioners were actually engaged at such times in the work for which they were appointed. It should not be difficult, where proper business of the commission is duly performed, to show that fact, and the bare statement that a meeting was held and commissioners were present is insufficient to show that the meeting was one for which compensation is due. In such cases, therefore, no allowance should be made. On the other hand, it is proper for the commissioners to fix dates for as many stated meetings as may be required to despatch the business in hand; and where such meeting has been called, and a commissioner attends ready to proceed, and, by the absence of the other commissioners and the want of a quorum, is prevented through no fault of his from performing his duties, an allowance should be made to him, because in attending he has been obliged to arrange his other duties with a view to such meeting, and it seems but right that he should be compensated. So, too, with respect to adjournments granted for good cause shown either by the corporation counsel or the property owners, the commissioners present should be credited with the meeting, because, having attended and been ready to proceed, they have, without fault on their part, lost the time consumed in going to and from the place of meeting; and where the adjournment is reasonable and justifiable, and the proof so shows, they should be paid for their attendance.

The further question is presented whether credit should be given a commissioner for meetings which the record does not show that he attended, beyond the statement on a subsequent date that he then said he was present at the session. The commissioners have control over the minutes of their meetings, and such minutes, unless shown to be incorrect, should be held as to them conclusive. Hereafter we shall adhere to this rule; but in the present proceeding, the commissioners not having had it called to their attention, we shall not apply it strictly, and for meetings the minutes of which do not show the attendance of a particular commissioner we shall be governed by the statement of such commissioner made on the minutes of a subsequent meeting that he had been present. In the instances, however, where the minutes show that the commissioner could not have been present or that he arrived after the adjournment, no fee will be allowed him.

Nor is credit to be given to the commissioners in every instance where the record merely states that an "executive session" was held. The more numerous of the meetings for which charge is here claimed, as shown by the respondent's tabulation of the meetings, were the so-

called "executive sessions," and the holding of such meetings is a
course resorted to in a number of these proceedings brought to our
attention, which serves no purpose, so far as appears, except to unduly
increase the cost of the proceedings. That executive sessions may be
necessary, and that the commissioners have a right to attend them and
charge therefor, we grant; but, where the number is out of all propor-
tion to the questions or area of land involved, they cannot be sanc-
tioned; nor can charges therefor be sustained. And we think that
the mere statement that an "executive session" was held is an insuf-
ficient showing of its nature and necessity. This is not a compliance
with section 998 of the Greater New York Charter (as amended by
chapter 466, Laws 1901) which provides: " * * * Upon such
taxation due proof of the nature and the extent of the services rendered
and disbursements charged shall be furnished and no unnecessary cost
or charges shall be allowed." Herein it appears, as stated by the
corporation counsel, that:

"Six parcels of land were acquired in this proceeding, equaling in area
slightly over ten city lots. These parcels were all in street use, for which
nominal awards of $1 each were made. There were no claims presented to
the commissioners for damages for the taking of these parcels, only one ex-
pert was examined, and the proceeding was entirely ex parte, at least so far
as the awards are concerned. * * * The total number of pages of testi-
mony was twenty-one."

Keeping in mind, therefore, the nature and extent of the work
in hand, and the principles above stated as to the payment of com-
pensation to these commissioners, we have examined the entire rec-
ord, and our conclusions as to the meetings for which each of the
commissioners should be paid may be stated by taking up the differ-
ent periods of time and class of meetings for which compensation
is claimed, as presented in the table compiled by the respondents.
That table is in the following form:

| Business Transacted. | Dates. | Clancy. | Carleton. | Windolph. |
|---|---|---|---|---|
| Qualification and organization...... | Oct. 9, 1900, and prior thereto. | 6 | 1 | 2 |
| Viewing premises and proving title.. | Oct. 9, 1900, to Nov. 28, 1900. | 8 | 8 | 8 |
| Executive sessions on awards and examination and cross-examination of city expert............... | Nov. 28, 1900, to Jan. 18, 1901. | 7 | 7 | 6 |
| Executive sessions on area assessments and waiting for maps ...... | Jan. 18, 1901, to May 31, 1901. | 18 | 18 | 15 |
| Preparation and filing preliminary and final reports and signing and hearing objections............... | May 31, 1901, to Mar. 21, 1902. | 11 | 10 | 9 |
| Total meetings .................... | | 50 | 44 | 40 |

The meetings on qualification and organization we allow. Un-
der the second heading, "Viewing premises and proving title,"

the meeting of October 6, 1900, we disallow, because, although it appears that the commissioners met and adjourned, there is nothing to show any duties performed nor what was the cause of the adjournment. We credit Commissioner Windolph, however, with the meetings of October 23 and October 30, 1900; for, although the minutes are silent on the subject, he stated on November 8, 1900, that he attended them. Under the next group of meetings we also credit Commissioner Clancy with the meeting of December 5, 1900, as to which there is no record of his attendance beyond his subsequent statement that he had attended. We disallow him, however, the meeting of December 28, 1900, which he stated on March 15, 1901, that he had attended; it appearing from the minutes of December 28th that Commissioner Carleton alone was present, and the meeting, therefore, was adjourned. Commissioner Windolph should not be credited with the meeting of January 4, 1901; the record not showing his presence, beyond the statement that he called after the meeting had adjourned, "and asked to have his appearance noted." During this third period, from November 28, 1900, to January 18, 1901, Commissioner Clancy is credited with four, Commissioner Carleton with four, and Commissioner Windolph with three "executive sessions," of which we think two each an ample allowance, in view of the nature of the work, which, as the corporation counsel says, was "extremely simple," and of the other meetings allowed, which the record shows were largely executive in their character. In the fourth classification, during the period from January 18, 1891, to May 31, 1901, Commissioner Clancy is to be disallowed the meetings on February 1, 8, and 21, and the meeting of May 3, 1901. The record does not show his attendance, and though he stated on March 21, 1902, that he attended them, in this he is mistaken; for the minutes show that at the first three meetings but one commissioner was present, and the meeting was accordingly adjourned, and that at the meeting of May 3, 1901, the clerk was directed "to notify Commissioner Clancy of the next meeting." The meetings of March 1st and 8th, April 19th, and May 10th, however, we allow the commissioner, in view of his subsequent statement that he was present. Commissioner Windolph we also disallow the meeting of February 8, 1901, which meeting, as stated, was adjourned, Commissioner Carleton alone being present, who alone is to be credited with it. During this period the record shows that Commissioner Clancy attended eight "executive sessions," Commissioner Carleton ten, and Commissioner Windolph ten, which we think, as before stated, should be reduced; and in this case, in view of the other meetings on the subject in hand, and allowances made, Commissioner Clancy is to be credited with two, Commissioner Carleton with three, and Commissioner Windolph also with three meetings. In the fifth and last period, from May 31, 1901, to March 21, 1902, Commissioner Carleton is not to be allowed for the meeting of March 10, 1902; it appearing merely that he stated subsequently that he had "called immediately after the adjournment." Nor can Commissioner Clancy be credited with the meeting of January 16, 1902, which on March 21, 1902,

he stated he attended. It appears that at the meeting of January 16th the other two commissioners signed the preliminary estimate and assessment, and that Commissioner Clancy signed such estimate at a meeting on January 18th, which he alone attended, and with which he is credited. The "executive sessions" attended during the time were: Commissioner Clancy three, Commissioner Carleton four, and Commissioner Windolph four; and a fair allowance, we think, would be one meeting to Commissioner Clancy and two each to the other commissioners.

As a result, therefore, of our examination, we have come to the conclusion, after deducting meetings as to which the record shows upon its face that no allowance should be made, and reducing the executive meetings claimed by the commissioners to what may fairly be allowed, that Commissioner Clancy is to be credited with 33 meetings, Commissioner Carleton 31 meetings, and Commissioner Windolph 27 meetings. In the form of a table similar to that prepared by the commissioners, our conclusions would be presented as follows:

| Business Transacted. | Dates. | Clancy. | Carleton. | Windolph. |
|---|---|---|---|---|
| Qualification and organization...... | Oct. 9, 1900, and prior thereto. | 6 | 1 | 2 |
| Viewing premises and proving title.. | Oct. 9, 1900, to Nov. 28, 1900. | 7 | 7 | 7 |
| Executive sessions on awards and examination and cross-examination of city expert............... | Nov. 28, 1900, to Jan. 18, 1901. | 4 | 5 | 4 |
| Executive sessions on area of assessment and waiting for maps ....... | Jan. 18, 1901, to May 31, 1901. | 8 | 11 | 7 |
| Preparation and filing preliminary and final reports and signing thereof and hearing objections......... | May 31, 1901, to Mar. 21, 1902. | 8 | 7 | 7 |
| Total meetings..................... | | 33 | 31 | 27 |

It will be noticed that we have allowed to Commissioner Carleton nearly as much as to Commissioner Clancy, contrary both to the claims of the commissioners and the finding of the corporation counsel; but this is due to the allowance to him of meetings which he alone attended, and was prevented from proceeding through the absence of the other commissioners, and the disallowance to Commissioner Clancy of a number of meetings which it appears from the record that he did not attend.

We think, therefore, that the order appealed from should be modified so as to award compensation to the commissioners, respectively, for the meetings above indicated, and as so modified affirmed, without costs. All concur.